879 F.2d 1005
 1989-1 Trade Cases 68,622
 H.L. HAYDEN CO. OF NEW YORK, INC. and Schein Dental
Equipment Corp., Plaintiffs-Appellants, Cross-Appellees,
v.
SIEMENS MEDICAL SYSTEMS, INC., Healthco, Inc. and Patterson
Dental Co., Defendants-Appellees,
Siemens Medical Systems, Inc. and Healthco, Inc.,
Defendants-Appellees, Cross-Appellants.
 Nos. 1239, 1297 and 1298, Dockets 88-7109, 88-7113 and 88-7127.
 United States Court of Appeals,
Second Circuit.
 Argued June 10, 1988.
Decided June 12, 1989.
 
 John E. Daniel, New York City (Lawrence Kill, Ralph S. Spritzer, Anderson Russell Kill & Olick, P.C., of counsel), for plaintiffs-appellants-cross-appellees.
 Michael D. Blechman, New York City (Robert B. Bernstein, Kaye, Scholer, Fierman, Hays & Handler, of counsel), for defendant-appellee-cross-appellant Siemens Medical Systems, Inc.
 Michael H. Byowitz, New York City (Bertram M. Kantor, Wachtell, Lipton, Rosen & Katz, of counsel), for defendant-appellee-cross-appellant Healthco, Inc.
 David S. Hammer, New York City (Michael Mills, Mayer, Brown & Platt, of counsel), for defendant-appellee Patterson Dental Co.
 Before VAN GRAAFEILAND and MAHONEY, Circuit Judges, and METZNER,* District Judge.
 MAHONEY, Circuit Judge:
 
 
 1
 In this opinion, we consider appeals and cross appeals from a summary judgment dismissing antitrust and related claims and commercial tort counterclaims arising from the termination of a distributor of dental x-ray equipment, and refusal to do business with that distributor and a related mail order vendor of such equipment. The district court opinion below, H.L. Hayden Co. of New York v. Siemens Medical Sys., 672 F.Supp. 724 (S.D.N.Y.1987), was rendered after extensive discovery concerning all the claims in litigation.
 
 
 2
 Plaintiffs-appellants-cross-appellees H.L. Hayden Co. of New York, Inc. ("Hayden") and Schein Dental Equipment Corp. ("Schein Dental") charged that, as a result of various conspiracies among defendants-appellees-cross-appellants Siemens Medical Systems, Inc. ("Siemens") and Healthco, Inc. ("Healthco"), together with defendant-appellee Patterson Dental Co. ("Patterson"), Siemens terminated Hayden as a Siemens dealer and refused to do business with Hayden or Schien Dental, in violation of section 1 of the Sherman Act, 15 U.S.C. Sec. 1 (1982). Hayden and Schein Dental also complained that Healthco and Patterson attempted and conspired[1] to monopolize the markets for the sale of dental equipment and dental x-ray equipment to dentists in the United States, in violation of section 2 of the Sherman Act, 15 U.S.C. Sec. 2 (1982).
 
 
 3
 In addition, Hayden and Schien Dental complained that Siemens violated section 2 of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. Sec. 13 (1982), by providing discriminatory price advantages to Healthco, Patterson and other dealers which were denied to Hayden and Schein Dental in violation of subdivision (a) thereof, id. Sec. 13(a); discriminatory discounts in violation of subdivision (c), id. Sec. 13(c); and discriminatory services in violation of subdivision (e), id. Sec. 13(e). Healthco and Patterson were alleged to have induced these discriminations in violation of subdivision (f), id. Sec. 13(f). Hayden and Schein Dental also asserted various pendent state law claims. Summary judgment was entered dismissing all their claims, and they now appeal only the dismissal of their federal antitrust claims.
 
 
 4
 Siemens asserted a number of counterclaims. All but one[2] were dismissed by summary judgment. Siemens pursues on appeal only its second and fifth counterclaims, i.e., that Schein Dental's continuing, unauthorized sale of Siemens' x-ray equipment constitutes a violation of Section 43(a) of the Lanham Act, 15 U.S.C. Sec. 1125(a) (1982), and that Schein Dental's purchase for resale of Siemens equipment from authorized Siemens dealers, in knowing violation of their dealership agreement with Siemens, constitutes a tortious interference with contractual relationships in violation of New York law.
 
 
 5
 Healthco asserted, and pursues on appeal after dismissal by summary judgment below, a single counterclaim that Hayden and Schein Dental are "free riders", capitalizing upon presale, point-of-sale and postsale services provided by "full service" dealers such as Healthco, and that this constitutes common law unfair competition actionable under New York law. Patterson did not assert any counterclaims.
 
 
 6
 We affirm the judgment of the district court.
 
 Background
 
 7
 Siemens is a subsidiary of the West German corporation Siemens Aktiengesellschaft ("Siemens AG"), which manufactures the equipment that Siemens distributes in the United States. Siemens supplies dental x-ray equipment of two types: intraoral, which depicts quadrants of a patient's mouth, and panoramic, which depicts a patient's entire mouth and jaw. Siemens has significant competition in this industry. In 1981, for example, it was one of seven suppliers responsible for ninety-five percent of the dental x-ray sales in the United States, and there were at least nine other competing suppliers. See Hayden, 672 F.Supp. at 728 n. 1.
 
 
 8
 This relatively large number of dental x-ray suppliers generates considerable price competition. Siemens prides itself on selling the "Mercedes" of the dental x-ray market, and its equipment retails for considerably more than its competitors' equipment. In August, 1983, for example, the recommended retail price of Siemens' intraoral unit was $4,650, compared to $3,295 and $2,595 for two of its competitors' units. Id.
 
 
 9
 Healthco and Patterson are leading nationwide distributors of dental equipment to dentists. Both dealers carry all major brands of dental equipment. The dealer market is somewhat more concentrated than the supplier market. In the year ended September, 1982, for example, Healthco accounted for approximately thirty percent, and Patterson approximately twenty-two percent, of Siemens' sales to dealers.
 
 
 10
 Healthco and Patterson are both full service dealers of dental x-ray equipment, with fully equipped showrooms to present and demonstrate the equipment, sales personnel trained in its operation, and service personnel capable of assembling, installing, calibrating and servicing the equipment. Hayden is also a full service dental equipment dealer, and sold x-ray equipment from both Siemens and other suppliers.
 
 
 11
 Marvin Schein acquired fifty percent ownership of Hayden in 1979, and the balance the following year. He thereafter founded Schein Dental, which in early 1982 began selling dental equipment through mail order catalogs. Schein Dental was not a Siemens dealer, but received Siemens equipment via Hayden. The district court concluded, however, that Siemens either expressly approved the inclusion of its equipment in Schein Dental's catalog or, once aware of its inclusion, cooperated with Schein Dental by, for example, drop-shipping dental equipment directly to Schein Dental's customers outside Hayden's sales area, even though Hayden was technically the customer; and authorizing split commissions for such sales between Hayden and the Siemens representative in the local area. Hayden, 672 F.Supp. at 729.
 
 
 12
 Schein Dental had no sales force, service staff or showroom. Rather, it sold dental equipment through mail order catalogs containing pictures and descriptions of the merchandise, and a toll-free telephone number at which Schein Dental personnel provided further information and assistance to readers of its catalog. Schein Dental did not assemble, install, calibrate or service any of the equipment it sold, but provided dentists with the names of local independent service organizations for these support activities. As a result, Schein Dental sold dental equipment at a discount. Siemens' products, for example, were sold for between twenty to twenty-five percent less by Schein Dental than by Siemens' authorized, full service dealers. Id.
 
 
 13
 Schein Dental's mail order business grew rapidly, generating considerable price competition in the field. The success of Schein Dental's mail order business began to concern Healthco, Patterson and other full service distributors of dental equipment, resulting in complaints by these distributors to Siemens about Schein Dental's mail order operation.
 
 
 14
 On April 25, 1983, Siemens wrote to all its authorized dealers, including Hayden, stating:
 
 
 15
 You are and remain an authorized dealer for Siemens Dental Products because of your reputation as a full service dealer, capable of promoting, selling and installing Siemens Products, consistent with [the] quality associated with these Products and our trade name. Sales by you to third parties, including mail order houses, for redistribution are not allowed since Siemens has a legal obligation and a dedication to its good will to monitor sales and installation of its Products in a quality manner.
 
 
 16
 On the same date, Siemens wrote Schein Dental requesting that all Siemens products be removed from the Schein Dental catalog.
 
 
 17
 Over the succeeding months, efforts were made to salvage the Hayden-Siemens relationship. The district court determined, however, that despite repeated reassurances, Hayden continued to fill orders for Schein Dental, specifying that in 1983, Schein Dental sold $336,285.00 worth of Siemens' equipment while Hayden's sales were $13,365.00. Hayden, 672 F.Supp. at 730 n. 4. Hayden also declined to enter into an "Authorized Dealership Agreement" which Siemens sent to all its dealers on August 30, 1983. This agreement, which Siemens' other dealers signed with only minor changes, made no direct reference to mail order sales, but stressed the promotion, installation and servicing of Siemens' equipment. Hayden was terminated as a Siemens dealer in late November, 1983, and this action was instituted in January, 1984.
 
 
 18
 The substance of the legal claims made by the parties and under review here has been set forth in the introductory portion of this opinion. The gist of plaintiffs' case is that Siemens terminated Hayden, and thereby Schein Dental, as a result of a conspiracy between Siemens, Healthco and Patterson. Hayden and Schein Dental claim that Siemens was motivated to terminate them not only by pressure from its dominant full service dealers, Healthco and Patterson, but also in order, by reciprocation, to curb Healthco from promoting and selling its own Lumix line of x-ray equipment which was competing with, and underselling, Siemens' intraoral equipment.
 
 
 19
 Siemens responded that although Healthco and Patterson had complained about Schein Dental's low prices, Siemens unilaterally terminated Hayden and Schein Dental, independent of any pressure from or concerted action with Healthco and Patterson, because Siemens was concerned that mail order distributors were "free riding" on the product promotion efforts of Siemens' full service dealers, that mail order was an ineffective marketing technique, and that Schein Dental's failure to install or service Siemens' equipment was harming Siemens' reputation for quality.
 
 
 20
 Siemens denied plaintiffs' other claims, and asserted the counterclaims previously described, inter alia. Healthco and Patterson also denied plaintiffs' various claims, and Healthco asserted the counterclaim previously described.
 
 
 21
 By opinion and order filed October 9, 1987 the district court granted summary judgment dismissing all claims and counterclaims except Siemens' first counterclaim.[3] With respect to plaintiffs' Sherman Act section 1 claim of conspiracies in restraint of trade, the district court concluded that under the standard established in Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), as elucidated in Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), plaintiffs had not made a case for conspiracy adequate to survive a motion for summary judgment. Hayden, 672 F.Supp. at 731-40.
 
 
 22
 As to the Sherman Act section 2 claim of an attempt to monopolize, the court concluded that plaintiffs offered no substantive evidence that Healthco or Patterson had the requisite specific intent to monopolize. The court further determined that Healthco and Patterson did not have an adequate share of the national market for the retail sale of dental equipment to establish the "dangerous probability" of success required by the relevant cases, and that the market shares of Healthco and Patterson could not be aggregated for purposes of that determination. Id. at 740-41.
 
 
 23
 The "conspiracy to monopolize" claim was dismissed because the section one and section two conspiracies were not deemed "reciprocally distinguishable from and independent of each other," as required by American Tobacco Co. v. United States, 328 U.S. 781, 788, 66 S.Ct. 1125, 1128-29, 90 L.Ed. 1575 (1946); and because of failure, once again, to establish a jury issue as to conspiracy. Id. at 741-43. The various Robinson-Patman Act claims advanced by Hayden and Schein Dental were dismissed for failure to establish a material issue of fact concerning antitrust injury. Id. at 743-45.
 
 
 24
 Siemens' second counterclaim was dismissed on the basis that the unauthorized sale of a genuine trademark product does not in itself constitute trademark infringement. Id. at 748-49. Siemens' fifth counterclaim was deemed defective for failure to establish any injury to Siemens resulting from Schein Dental's purchase of Siemens' equipment from authorized Siemens dealers in violation of Siemens' Authorized Dealership Agreement. Id. at 749-50. Healthco's counterclaim was dismissed because Schein Dental's "free rider" activities, the proof for which the district court deemed suspect, were considered in any event not to violate the common law of unfair competition.
 
 
 25
 A vast array of factual contentions have been advanced by the parties. In considering a motion for summary judgment, however, "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986).
 
 
 26
 It will therefore be more helpful to discuss the factual contentions of the parties in the context of the legal issues to which they relate, and we accordingly turn to the consideration of those issues without further preliminary development of the factual background of the case.
 
 Discussion
 
 27
 A. Summary Judgment.
 
 
 28
 The district court disposed of all claims in this action by summary judgment. Our review, therefore, is limited to determining whether the district court properly concluded as to each claim that there was "no genuine issue as to any material fact," thus entitling the moving party to "judgment as a matter of law." Fed.R.Civ.P. 56(c). Further, as indicated above, we must determine whether the substantive law was correctly applied, for the identification of material facts for summary judgment purposes "rests on the substantive law." Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Kronfeld v. Trans World Airlines, 832 F.2d 726, 731 (2d Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1470, 99 L.Ed.2d 700 (1988). Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the nonmoving party. See Anderson, 477 U.S. at 248-49, 106 S.Ct. at 2510-11; Murray v. National Broadcasting Co., 844 F.2d 988, 992 (2d Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988). This same standard is applied by a reviewing court upon appeal from a grant of summary judgment. See Kronfeld, 832 F.2d at 731, and authorities there cited; O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1466 (9th Cir.1986) (circuit court review of grant of summary judgment is de novo ); see generally Lund's Inc. v. Chemical Bank, 870 F.2d 840, 844 (2d Cir.1989).
 
 
 29
 Both the Supreme Court and this court have encouraged the use of summary judgment in complex cases to avoid unnecessary trials. See Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d. Cir.) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)), cert. denied, --- U.S. ----, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir.1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Nevertheless, summary judgment is not a substitute for trial. Apex, 822 F.2d at 252. Thus, although only reasonable inferences can be drawn from the evidence in favor of the nonmoving party, id. at 252-53, and immaterial factual disputes cannot block summary judgment, Reborn Enters. v. Fine Child, Inc., 590 F.Supp. 1423, 1436 (S.D.N.Y.1984) (citing SEC v. Research Automation Corp., 585 F.2d 31, 35 (2d Cir.1978)), aff'd, 754 F.2d 1072 (2d Cir.1985) (per curiam) (adopting district court opinion), "the question of what weight should be assigned to competing permissible inferences remains within the province of a factfinder at a trial," Apex, 822 F.2d at 253. But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592-1593, 20 L.Ed.2d 569 (1968)).
 
 
 30
 Summary judgment has traditionally been granted sparingly in antitrust cases, however, because the claims "so integrally involve motive and intent to conspire and injure." George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 555 (2d Cir.1977) (citing Poller v. CBS, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962)); Reborn Enters., 590 F.Supp. at 1435 (citing Poller and Frey ). Indeed, antitrust conspiracies "are rarely evidenced by explicit agreements, but must almost always be proven by 'inferences that may be fairly drawn from the behavior of the alleged conspirators.' " Schwimmer v. Sony Corp. of Am., 677 F.2d 946, 953 (2d Cir.) (quoting Michelman v. Clark-Schwebel Fiber Glass Corp., 534 F.2d 1036, 1043 (2d Cir.), cert. denied, 429 U.S. 885, 97 S.Ct. 236, 50 L.Ed.2d 166 (1976)), cert. denied, 459 U.S. 1007, 103 S.Ct. 362, 74 L.Ed.2d 398 (1982). Further, we must accord plaintiffs "the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 699, 82 S.Ct. 1404, 1410, 8 L.Ed.2d 777 (1962).
 
 
 31
 On the other hand, the Supreme Court has articulated specific rules which make summary judgment a good deal more easily available to dismiss claims of antitrust conspiracy in violation of Sherman Act Sec. 1, 15 U.S.C. 1 (1982). We shall consider those rules in our discussion of plaintiffs' section one claim of conspiracies in restraint of trade, to which we now turn.
 
 B. The Sherman Act Section 1 Claim.[4]
 
 32
 Hayden and Schein Dental pleaded a single section 1 claim. Although their complaint is not at all clear in this regard, the district court treated that claim as encompassing "three separate section 1 conspiracies: a vertical conspiracy between the manufacturer, Siemens, and two of its distributors, Healthco and Patterson [to terminate Hayden as a Siemens distributor and thereby Schein Dental's mail order sales]; a horizontal conspiracy between Healthco and Patterson [to pressure Siemens to eliminate the Schein Dental mail order competition]; and a horizontal conspiracy between Siemens and Healthco [whereby Siemens agreed to eliminate mail order sales of its equipment in exchange for Healthco's agreement to curtail promotion of, and raise prices on, its Lumix brand of x-ray equipment]." Hayden 672 F.Supp. at 731 n. 9. Like the district court, we are prepared to consider all these conspiracies without regard to the extent of their articulation in plaintiffs' complaint, see supra note 1, testing them against the standards established by the Supreme Court with respect to section one conspiracy claims.
 
 
 33
 The leading case is Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). There, a terminated distributor of agricultural herbicides sued the manufacturer, alleging a section one conspiracy between the manufacturer and other distributors to fix resale prices, and termination of the distributor in furtherance of the conspiracy. In affirming a judgment for the distributor, the Supreme Court stated:
 
 
 34
 On a claim of concerted price fixing, the antitrust plaintiff must present evidence sufficient to carry its burden of proving that there was such an agreement. If an inference of such an agreement may be drawn from highly ambiguous evidence, there is a considerable danger that the doctrines enunciated in Sylvania and Colgate will be seriously eroded.[5]
 
 
 35
 Permitting an [illegal] agreement to be inferred merely from the existence of complaints, or even from the fact that termination came about "in response to" complaints, could deter or penalize perfectly legitimate conduct. As Monsanto points out, complaints about price cutters "are natural--and from the manufacturer's perspective, unavoidable--reactions by distributors to the activities of their rivals." Such complaints, particularly where the manufacturer has imposed a costly set of nonprice restrictions, "arise in the normal course of business and do not indicate illegal concerted action." Moreover, distributors are an important source of information for manufacturers. In order to assure an efficient distribution system, manufacturers and distributors constantly must coordinate their activities to assure that their product will reach the consumer persuasively and efficiently. To bar a manufacturer from acting solely because the information upon which it acts originated as a price complaint would create an irrational dislocation in the market.
 
 
 36
 Id. 465 U.S. at 763-64, 104 S.Ct. at 1470-71 (citations omitted); see Schwimmer v. Sony Corp. of Am., 677 F.2d at 953.
 
 
 37
 Based upon this analysis, the Court stated the following rule:
 
 
 38
 The correct standard is that there must be evidence that tends to exclude the possibility of independent action by the manufacturer and distributor. That is, there must be direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others had a conscious commitment to a common scheme designed to achieve an unlawful objective.
 
 
 39
 Monsanto, 465 U.S. at 768, 104 S.Ct. at 1472.
 
 
 40
 Elaborating upon the Monsanto rule in Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court said:
 
 
 41
 [A]ntitrust law limits the range of permissible inferences from ambiguous evidence in a Sec. 1 case. Thus, in Monsanto Co. v. Spray-Rite Service Corp., 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), we held that conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy. Id., at 764, 104 S.Ct. at 1470.
 
 
 42
 Id. 475 U.S. at 588, 106 S.Ct. at 1357; see also id. at 597 n. 21, 106 S.Ct. at 1362 n. 21; Burlington Coat Factory Warehouse Corp. v. Esprit De Corp. 769 F.2d 919, 923 (2d Cir.1985).
 
 
 43
 We agree with the district court that, reviewed against these standards, the evidence of a section one conspiracy provided by Hayden and Schein Dental did not suffice to withstand summary judgment. There was evidence of distributor complaints concerning Schein Dental's mail order sales and pricing levels, but Monsanto makes clear that a termination in response to complaints does not establish a section one violation. Indeed, this was the rule in this circuit before Monsanto, see H.L. Moore Drug Exchange v. Eli Lilly & Co., 662 F.2d 935, 941 (2d Cir.1981), cert. denied, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); and of course remains the rule in its aftermath, see Sorisio v. Lenox, Inc., 701 F.Supp. 950, 957-58 (D.Conn.1988), aff'd, 863 F.2d 195 (2d Cir.1988) (per curiam) (adopting district court opinion).
 
 
 44
 The district court reviewed the evidence concerning Siemens' independent business reasons for terminating Hayden, which were the ineffectiveness of mail order marketing for Siemens' quality product, the negative impact upon Siemens' reputation of mail order sales without proper installation and servicing of its equipment, and the adverse reaction of Siemens' authorized dealers, who provide presale, point-of-sale and postsale services, to mail order distribution which takes a "free ride" on these services, and is thereby enabled to sell at reduced prices. See Hayden, 672 F.Supp. at 734-36. Plaintiffs discount these reasons as after-the-fact explanations crafted for litigation, pointing to Siemens' initial cooperation with Schein Dental's mail order efforts, prior to pressure from Healthco, Patterson and other distributors to terminate Hayden and Schein Dental.
 
 
 45
 It is established, however, that "the mere fact that a business reason advanced by a defendant for its cut-off of a customer is undermined does not, by itself, justify the inference that the conduct was therefore the result of a conspiracy." H.L. Moore, 662 F.2d at 941; see Valley Liquors, Inc. v. Renfield Importers, Ltd., 822 F.2d 656, 664 (7th Cir.) (assertion of plausible reason for termination by defendant requires plaintiff to refute resulting inference of independence), cert. denied, --- U.S. ----, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987); Burlington Coat Factory, 769 F.2d at 923 (antitrust plaintiff opposing summary judgment may not rest on conclusory assertions of conspiracy when defendants have proffered substantial evidence supporting plausible and legitimate explanation of their conduct); Reborn Enters., 590 F.Supp. at 1445 (no section one liability for manufacturer which gives false reason for termination to terminated retailer, provided manufacturer acts unilaterally and not pursuant to conspiracy).
 
 
 46
 At a minimum, in any event, as the district court correctly concluded, defendants established conduct that is consistent with permissible activity, requiring plaintiffs to come forward with evidence "that tends to exclude the possibility of independent action...." Monsanto, 465 U.S. at 768, 104 S.Ct. at 1472. As this court has observed, "[w]e have overturned jury verdicts[6] where, 'taken as a whole, the evidence point[ed] with at least as much force toward unilateral action [by the defendants] as toward conspiracy, and a jury would have to engage in impermissible speculation to reach the latter conclusion.' " International Distribution Centers, Inc. v. Walsh Trucking Co., 812 F.2d 786, 794 (2d Cir.) (quoting Venture Technology, Inc. v. National Fuel Gas Co., 685 F.2d 41, 48 (2d Cir.), cert. denied, 459 U.S. 1007, 103 S.Ct. 362, 74 L.Ed.2d 398 (1982)), cert. denied, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). We therefore next consider the evidence of conspiracy offered by Hayden and Schein Dental.
 
 
 47
 The district court reviewed in considerable detail the evidence of conspiracy provided by plaintiffs, concluding that it did not meet the Monsanto-Matsushita standard for avoiding summary judgment. Hayden and Schein Dental contend on appeal, however, that (1) the district court's analysis of the evidence which it did consider was flawed, and (2) the court's analysis overlooked substantial probative evidence in plaintiffs' favor.
 
 
 48
 In the district court's view, plaintiffs "mark the American Dental Association's October 1982 annual meeting as the starting point in the conspiracy." Hayden, 672 F.Supp. at 737. The district court asserted there was "some evidence" that an officer of Siemens told full-service dealers during a private meeting at that convention that he was "working on" the mail order problem, id., although Patterson cites us to a record reference indicating that this comment was made by the Siemens officer only to a group of Siemens territory representatives, and not directly to full service dealers.
 
 
 49
 The district court also considered a private meeting between the presidents of Healthco, Patterson and D.L. Saslow Co., the third major chain distributor of dental equipment, assertedly held at the Las Vegas convention. Id. at 738. Plaintiffs claim in their brief, however, that this meeting actually occurred four months later, in February, 1983, at a meeting of the Dental Dealers of America, Inc. and the Dental Manufacturers of America, Inc. in Chicago, and defendants concede the point. The district court saw nothing beyond surmise to indicate that there was any relevant conspiratorial discussion at the meeting. Id. Plaintiffs point only to evidence that a different competitive problem (concerning a pharmaceutical company that sold anesthetics to dentists) was discussed, and to deposition testimony by the president of Saslow that mail order "may have been" discussed at the meeting, although he did not recall any specific discussions.
 
 
 50
 The district court took into account a speech by Healthco's president at the Chicago convention in which he offered to share with other dealers exhibits which warned dentists that "it costs you more to buy your equipment from mail order than from a Healthco dealer" and attacked the industry's manufacturers for cooperating with mail order distributors; and a lunch between a Siemens officer, David Vitt, and Patterson's president, Peter Frechette, at the same convention which resulted in a follow-up letter by Vitt acknowledging discussion of Frechette's "philosophies concerning the distribution in the industry" and assuring Frechette that Vitt would "do everything in our power to offer you the best possible market environment." Id. Plaintiffs contend, apparently correctly, that the speech by Healthco's president was given at the prior year's convention of the same organization in February, 1982.
 
 
 51
 The district court also weighed correspondence between Healthco, Siemens and Siemens AG which contained "veiled language" intimating a boycott threat and an invitation to conspire; a refusal or reluctance by "dealers" to make routine follow-up calls on dentists who bought equipment from Schein Dental;[7] a meeting in June, 1982 at which Vitt urged Schein to raise prices; plaintiffs' contention of a quid pro quo arrangement between Healthco and Siemens calling for Siemens to eliminate Hayden as a dealer (and thereby Schein Dental) in return for Healthco's increased promotion of Siemens' equipment and reduced efforts to sell Healthco's competing Lumix line of dental x-ray equipment; and an April 5, 1983 technical report by a Siemens technical representative stating that dealers intended to "support totally" and "work with" two manufacturers of dental equipment who had decided to remove their products from the Schein Dental catalog. Id. at 737-39.
 
 
 52
 Plaintiffs point to continuing expressions of concern by Siemens with respect to Healthco's Lumix line, and low sales by Siemens to Healthco in January and February, 1983, followed by an increase in those sales in March, 1983, just before Siemens' April, 1983 announcement prohibiting mail order sales, as evidence of the alleged quid pro quo arrangement. The district court noted, however, that the reduced January and February sales levels resulted from a billing dispute between Healthco and Siemens. Id. at 738-39.
 
 
 53
 Plaintiffs also contend that the district court: gave inadequate weight to the market power of Healthco and Patterson, and its likely impact upon Siemens' decision to terminate Hayden (and thereby Schein Dental); ignored evidence that Patterson and Healthco successfully pressured another manufacturer of dental x-ray equipment to eliminate mail order sales, and had also applied other anticompetitive pressure upon that manufacturer; disregarded an internal Siemens memorandum evidencing that Schein Dental had been terminated because of its pricing policies, rather than Siemens' alleged business justifications; and failed to consider evidence of boycott proposals to eliminate mail order reported in a dealer magazine.
 
 
 54
 As might be expected, defendants contest plaintiffs' version of many of these events. On a motion for summary judgment, however, all inferences must be drawn in favor of the nonmoving party, here plaintiffs. See Anderson, 477 U.S. at 248-49, 106 S.Ct. at 2510-11. Even so, we do not view the evidence of conspiracy presented here as satisfying the special requirements of the Monsanto-Matsushita rule for section one conspiracies.
 
 
 55
 The assertion by a Siemens officer in October, 1982 that he was "working on" the mail order problem, for example, does nothing to establish a collaboration directed to that situation, much less an illegal collaboration. There is no evidence of any substance that either the mail order situation in general, or Hayden and Schein Dental in particular, were even discussed at the meeting attended by the presidents of Healthco, Patterson and D.S. Saslow Co. The speech by Healthco's president demonstrated a concern with mail order sales, but it is conceded not only that such concern existed, but also that it was conveyed in very specific complaints to Siemens. Under Monsanto, 465 U.S. at 763-64, 104 S.Ct. at 1470-71, however, this is legally insignificant without additional proof of conspiracy. The luncheon between Messrs. Vitt and Frechette, and Mr. Vitt's follow-up letter, are ambiguous at best in terms of proving any illegal combination or conspiracy.
 
 
 56
 The other evidence considered by the district court, as well as the evidence which plaintiffs deem to have been improperly overlooked, adds little. Refusals by Siemens to make follow-up calls on Schein Dental customers, or an effort by Siemens to persuade Schein Dental to raise its prices, for example, are as consistent with responses by Siemens to dealer complaints as they are with a conspiracy between Siemens and those dealers. Proof that Healthco and Patterson put anticompetitive pressure on another manufacturer, and might therefore be expected to pressure Siemens, adds little to the conceded fact that Healthco and Patterson complained to Siemens concerning Schein Dental's prices. In the absence of proof of a conspiracy, evidence which undermines Siemens' business justifications does little to advance plaintiffs' cause. See Reborn Enters., 590 F.Supp. at 1445. The boycott proposals in a trade publication, one of nineteen anonymous responses to a questionnaire distributed at a meeting of Chicago area dental dealer salespeople and a column by a Los Angeles salesman for D.L. Saslow Co., are not connected to any defendant.
 
 
 57
 In sum, the evidence presented by Hayden and Schein Dental is, at best, "ambiguous," and "as consistent with permissible competition as with illegal conspiracy...." Matsushita, 475 U.S. at 588, 106 S.Ct. at 1357; see also id. at 597 n. 21, 106 S.Ct. at 1362 n. 21. It is therefore inadequate to withstand a motion for summary judgment, id., for a determination of an illegal section one conspiracy cannot be based upon speculation. International Distribution Centers, 812 F.2d at 795 (citing Oreck Corp. v. Whirlpool Corp., 639 F.2d 75, 80 (2d Cir.1980), cert. denied, 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981)); cf. Reborn Enters., 590 F.Supp. at 1445 (even proof of improper motivation insufficient to establish section one liability without proof of conspiracy). We conclude that there was inadequate proof of any of the section one conspiracies which plaintiffs attempted to assert, and that summary judgment was thus properly entered dismissing their claim under Sherman Act section one, 15 U.S.C. Sec. 1 (1982).
 
 
 58
 In view of this conclusion, we do not address Healthco's contention that even if a conspiracy were found, plaintiffs' section one claim would have to be dismissed because Business Elecs. Corp. v. Sharp Elecs. Corp., 485 U.S. 717, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988), decided subsequent to the district court opinion in this case, would in any event require proof, lacking here, that the conspiracy resulted in an unreasonable restraint of trade in some relevant market.
 
 C. The Sherman Act Section 2 Claims.[8]
 
 59
 Plaintiffs pleaded only attempts by Healthco and Patterson to monopolize the markets for the sale of dental equipment and dental x-ray equipment to dentists in the United States in violation of section 2 of the Sherman Act, 15 U.S.C. Sec. 2 (1982), but the district court considered claims of both attempts by, and a conspiracy between, Healthco and Patterson to do so. We shall also consider both the attempt and conspiracy claims. See supra note 1.
 
 
 60
 1. Attempts to Monopolize.
 
 
 61
 As indicated earlier, the district court dismissed the attempt claims because:
 
 
 62
 Plaintiffs offer no substantive evidence, direct or circumstantial, which would lead to the reasonable inference that either Healthco or Patterson harbor the intent necessary to support a section 2 claim. In addition, even if specific intent could be inferred, it is demonstrably clear that neither defendant possesses the requisite market power to suggest a dangerous probability that either could assume a monopoly position in the market.
 
 
 63
 672 F.Supp. at 740.
 
 
 64
 The elements of an attempt to monopolize are: 1) anticompetitive or exclusionary conduct; 2) specific intent to monopolize; and 3) a "dangerous probability" that the attempt will succeed. International Distribution Centers, 812 F.2d at 790 (citing Northeastern Tel. Co. v. AT & T, 651 F.2d 76, 85 (2d Cir.1981), cert. denied, 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 654 (1982)). A dangerous probability of success may exist where the defendant possesses a significant market share when it undertakes the challenged anticompetitive conduct. Id. at 791.
 
 
 65
 The district court concluded that, construing the available evidence in the light most favorable to the plaintiff, Healthco and Patterson each had, at a maximum, "approximately 20% of the dental equipment market." Hayden, 672 F.Supp. at 741. Plaintiffs do not challenge this determination on appeal. Indeed, deposition testimony of Patterson personnel indicated considerably lower percentages. Rather, plaintiffs contend that the district court ignored the narrower and important product market of dental x-ray equipment, ignored various geographic submarkets where Healthco and Patterson alone or together were the only or dominant sources of dental equipment, and failed to consider "other market characteristics" in addition to national market shares, as required by International Distribution Centers and other Second Circuit cases.
 
 
 66
 We find these contentions unpersuasive. Plaintiffs alleged in their complaint that the sale of dental equipment, and of dental x-ray equipment, "in the United States" constituted the relevant markets, and that Healthco and Patterson had equivalent combined shares of the two markets. The latter assertion was substantially reiterated in an affidavit by Marvin Schein submitted in opposition to defendants' motion for summary judgment. Furthermore, plaintiffs only cited, in support of their argument for geographic submarkets, assertions in the same Schein affidavit that Healthco and Patterson were the sole or dominant distributors of Siemens x-ray dental equipment in certain cities. This, of course, establishes nothing as to the overall market for dental x-ray equipment or dental equipment in those locations.
 
 
 67
 Plaintiffs' contentions concerning special market characteristics are similarly unavailing. We are cited only to a comment by a Healthco employee at a company sales meeting that most manufacturers "are scared to death of Healthco," and to passages of the Schein affidavit which are claimed to establish that "[t]he industry was becoming increasingly concentrated, both at the supplier and dealer level." In fact, however, the cited passages deal only with concentration at the supplier level, which obviously is not the market that is alleged to be the target of Healthco or Patterson's attempted monopolization at the dealer level.
 
 
 68
 In sum, plaintiffs offer nothing of substance to disturb the district court's conclusion that the twenty percent market share which Healthco and Patterson each commanded, in the context of a widely diversified and competitive market, was insufficient to establish the "dangerous probability" of success required to establish a Sherman Act section two attempt to monopolize. See Nifty Foods Corp. v. Great Atl. & Pac. Tea Co., 614 F.2d 832, 841 (2d Cir.1980) (one-third market share inadequate); United States v. ALCOA, 148 F.2d 416, 424 (2d Cir.1945) (same); Levitch v. CBS, 495 F.Supp. 649, 665 (S.D.N.Y.1980) (same), aff'd, 697 F.2d 495 (2d Cir.1983) (per curiam) (adopting district court opinion); see also International Distribution Centers, 812 F.2d at 792 (seventeen percent market share inadequate); 3 P. Areeda & D. Turner, Antitrust Law p 835, at 350 (1978) ("[c]laims [of attempted monopolization] involving 30 percent or lower market shares should presumptively be rejected").
 
 
 69
 Finally, the district court correctly concluded that the market shares of Healthco and Patterson could not be aggregated to establish an attempt to monopolize in violation of Sherman Act section two, 15 U.S.C. Sec. 2 (1982). The court noted that in Levitch, no attempt liability was found even though the defendants, the three television networks, in the aggregate controlled the entire relevant market, Hayden, 672 F.Supp. at 741; and quoted the following, id., from Consolidated Terminal Sys. v. ITT World Communications, 535 F.Supp. 225 (S.D.N.Y.1982):
 
 
 70
 [Plaintiff's] allegations that [defendants] account for between 98 and 100 percent of the market assumes that the defendants' combined market power is the relevant datum. That approach, however, might be termed tautological.... Rather, in order to sustain a charge of monopolization or attempted monopolization, a plaintiff must allege the necessary market domination of a particular defendant.
 
 
 71
 Id. at 228-29.
 
 
 72
 In view of the plaintiffs' failure to present proof from which a jury could rationally conclude that the "dangerous probability" requirement was satisfied, summary judgment dismissing the "attempt to monopolize" claims against Healthco and Patterson was properly granted. We therefore need not consider the district court's ruling that there was a failure of proof as to their "harbor[ing] the intent necessary to support a section 2 claim," Hayden, 672 F.Supp. at 740.
 
 
 73
 2. Conspiracy to Monopolize.
 
 
 74
 The district court granted summary judgment dismissing this claim because: (1) " 'Secs. 1 & 2 of the Sherman Act require proof of conspiracies which are reciprocally distinguishable from and independent of each other although the objects of the conspiracies may partially overlap,' " id. at 742 (quoting American Tobacco Co. v. United States, 328 U.S. 781, 788, 66 S.Ct. 1125, 1128, 90 L.Ed. 1575 (1946)), a requirement deemed unsatisfied because plaintiffs' section two conspiracy claim was "really their section 1 charge against Healthco and Patterson masquerading under the guise of section 2," id. 672 F.Supp. at 742-43; and (2) in any event, there was inadequate proof of any conspiracy, id. at 743.
 
 
 75
 We are not persuaded by the district court's American Tobacco rationale for dismissal of plaintiffs' section two conspiracy claim. The full context of the Supreme Court's reference to "reciprocally distinguishable" conspiracies is provided by the following quotation:
 
 
 76
 [W]e have here separate statutory offenses, one a conspiracy in restraint of trade that may stop short of monopoly, and the other a conspiracy to monopolize that may not be content with restraint short of monopoly. One is made criminal by Sec. 1 and the other by Sec. 2 of the Sherman Act.
 
 
 77
 We believe also that in accordance with the Blockburger case, Secs. 1 and 2 of the Sherman Act require proof of conspiracies which are reciprocally distinguishable from and independent of each other although the objects of the conspiracies may partially overlap. In the present cases, the court below has found that there was more than sufficient evidence to establish a conspiracy in restraint of trade by price fixing and other means, and also a conspiracy to monopolize trade with the power and intent to exclude actual and potential competitors from at least a part of the tobacco industry.
 
 
 78
 328 U.S. at 788, 66 S.Ct. at 1128 (citation omitted). Consistent with this analysis, the Court affirmed convictions of all defendants for conspiracies in violation of sections one and two of the Sherman Act, 15 U.S.C. Secs. 1 and 2 (1982).
 
 
 79
 So here, plaintiffs' claim of a section one conspiracy is directed primarily to the elimination of Hayden (and thereby Schein Dental) as a competitor, whereas its claim of a section two conspiracy is directed to attaining "a monopoly over the sale of dental equipment and dental x-ray equipment to dentists in the United States." We view these conspiracies, within the meaning of American Tobacco, as "reciprocally distinguishable from and independent of each other although the objects of the conspiracies may partially overlap." Id. at 788, 66 S.Ct. at 1128. We note, furthermore, that a dangerous probability of success need not be proven to establish a conspiracy, as distinguished from an attempt, to monopolize. International Distribution Centers, 812 F.2d at 795 n. 8 (collecting cases).
 
 
 80
 We agree with the district court, however, that plaintiffs did not proffer evidence adequate to withstand summary judgment on the section two conspiracy issue. Plaintiffs arguably do not face the special hurdles of the Monsanto-Matsushita rule on this issue, since that rule is directed by its terms only to section one conspiracies. See Matsushita, 475 U.S. at 588, 106 S.Ct. at 1357.[9] On the other hand, proof of a conspiracy to monopolize the national market for dental equipment and dental x-ray equipment is a more daunting undertaking than proof of a plot to eliminate a pair of related competitors. Without repeating our prior review of the conspiracy evidence proffered by plaintiffs, we conclude that it is insufficient to establish a genuine issue of material fact as to a conspiracy between Healthco and Patterson to monopolize these national markets.
 
 
 81
 D. The Robinson-Patman Act Claims.
 
 
 82
 Plaintiffs alleged that Siemens violated section 2 of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. Sec. 13 (1982),[10] by providing discriminatory price advantages to Healthco, Patterson and other dealers which were denied to Hayden and Schein Dental in violation of subdivision (a) thereof, id. Sec. 13(a); discriminatory discounts in violation of subdivision (c), id. Sec. 13(c); and discriminatory services in violation of subdivision (e), id. Sec. 13(e). Healthco and Patterson were alleged to have induced these discriminations in violation of subdivision (f), id. Sec. 13(f).
 
 
 83
 The district court held that "plaintiffs do not have standing to bring a Robinson-Patman claim for damages under section 4 of the Clayton Act,"[11] Hayden, 672 F.Supp. at 744, because "plaintiffs have proved no injury in fact," id. at 745. Specifically, the district court noted that Schein Dental's business remains "robust", id., and that plaintiffs cited only three instances where sales were lost because a competing dealer (Patterson) offered a lower price, ostensibly the result of a price break from Siemens in violation of 15 U.S.C. Sec. 13(a) (1982). 672 F.Supp. at 745. The district court summarized these instances as follows:
 
 
 84
 The evidence presented, however, makes it clear that in two of the instances price was not a material consideration in the dentists' decisions. In one, the manufacturer's warranty was an important consideration. In the other, a volume discount was given. A third instance rests solely upon a letter and not an affidavit.
 
 
 85
 Id.
 
 
 86
 "To recover treble damages [for a Clayton Act section 2 violation], ... a plaintiff must make some showing of actual injury attributable to something the antitrust laws were designed to prevent." J. Truett Payne Co. v. Chrysler Motors Corp., 451 U.S. 557, 562, 101 S.Ct. 1923, 1927, 68 L.Ed.2d 442 (1981) (citing Perkins v. Standard Oil Co., 395 U.S. 642, 648, 89 S.Ct. 1871, 1874, 23 L.Ed.2d 599 (1969) (plaintiff "must, of course, be able to show a causal connection between the price discrimination in violation of the Act and the injury suffered")). The Court in J. Truett Payne Co. concluded: "We emphasize that even if there has been a violation of the Robinson-Patman Act, petitioner is not excused from its burden of proving antitrust injury and damages. It is simply that once a violation has been established, that burden is to some extent lightened." Id., 451 U.S. at 568, 101 S.Ct. at 1930.
 
 
 87
 The district court expressed doubt that plaintiffs had a prima facie claim under the Robinson-Patman Act, Hayden, 672 F.Supp. at 744, noting a "substantial inconsistency" between their Robinson-Patman and Sherman Act claims, id. at 743 n. 25. We are not persuaded that plaintiffs' claims are fatally inconsistent, however, since it is certainly conceivable to retaliate against a discount pricing mail order dealer, at least in certain instances, by offering price advantages to his full service competitors. In any event, we shall assume a prima facie case of statutory violation for present purposes,[12] and focus our analysis, as did the district court, upon damages.
 
 
 88
 The three instances of injury cited by plaintiffs, and discounted by the district court, are inadequate to make the required showing of antitrust injury. In one instance, a sale to Dr. Robert F. Good, II of Pittsburgh, Pennsylvania, the purchaser made it explicitly clear in a letter to Marvin Schein that his decision to purchase from Patterson resulted from a desire to obtain a Siemens warranty, which was available only with a purchase from an authorized Siemens dealer. In a second instance, a sale to Dr. C. Spencer Lewis of Houston, Texas at a price lower than Schein Dental's, without Patterson's normal installation and delivery, an affidavit by a Patterson employee conceded that the sale was made because Dr. Lewis's "order was a large one, we hoped to maintain a substantial relationship with him, and there was no other way that I could respond to the low price Dr. Lewis said he could get by mail order." There is no showing, however, of a causal connection between this sale and any discount price advantage on Patterson's prior acquisition of the equipment in question from Siemens. The third sale, to Dr. David Day of Houston, Texas by Patterson at a price "competitive" with Schein Dental's which included installation, was asserted by the same Patterson employee to have been made at a discount price because Dr. Day was a valued Patterson customer and an "aggressive buyer." Again, there is no showing that the discounted price was related to any price advantage in the acquisition of the equipment from Siemens by Patterson.
 
 
 89
 Plaintiffs complain that the district court ignored "circumstantial evidence" of Robinson-Patman violations, which Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123-25, 89 S.Ct. 1562, 1576-77, 23 L.Ed.2d 129 (1969), requires to be considered; and further ignored the teaching of Zenith, 395 U.S. at 114 n. 9, 89 S.Ct. at 1571 n. 9, by requiring proof that such violations were the "sole cause" of antitrust injury. We are unpersuaded by these contentions. The circumstantial evidence cited by plaintiffs goes only to prove that Healthco and Patterson on occasion undersold Schein Dental, but does not establish any relationship between those sales and Robinson-Patman violations. In fact, the only evidence of such violations cited in plaintiffs' briefs to this court relates to price discounts afforded by Siemens to Patterson commencing in 1985, well after any Robinson-Patman violations that could conceivably have been the subject matter of a complaint dated January 12, 1984. In sum, even assuming, as we join the district court in doing, one or more Robinson-Patman violations, plaintiffs were required to establish some connection between those violations and injuries to plaintiff in the form of lost sales or profits.
 
 
 90
 We conclude that plaintiff failed to make a showing of antitrust injury adequate to save its Robinson-Patman claim for treble damages from dismissal by summary judgment. Plaintiffs also sought injunctive and declaratory relief with respect to that claim, however, and a determination which assumes a statutory violation without a demonstration of antitrust injury does not provide a basis to dismiss plaintiffs' Robinson-Patman Act claim insofar as it seeks such relief. As the Supreme Court stated in J. Truett Payne Co.:
 
 
 91
 By its terms Sec. 2(a) [of the Clayton Act as amended by the Robinson-Patman Act] is a prophylactic statute which is violated merely upon a showing that "the effect of such discrimination may be substantially to lessen competition." (Emphasis supplied). As our cases have recognized, the statute does not "require that the discriminations must in fact have harmed competition." Corn Products Refining Co. v. FTC, 324 U.S. 726, 742, 65 S.Ct. 961, 969, 89 L.Ed. 1320 (1945); FTC v. Morton Salt Co., [334 U.S. 37] at 46, 68 S.Ct., at 828 [92 L.Ed. 1196 (1948) ] ("the statute does not require the Commission to find that injury has actually resulted"). Section 4 of the Clayton Act, in contrast, is essentially a remedial statute. It provides treble damages to "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws...." (Emphasis supplied). To recover treble damages, then, a plaintiff must make some showing of actual injury attributable to something the antitrust laws were designed to prevent.
 
 
 92
 451 U.S. at 561-62, 101 S.Ct. at 1926-27.
 
 
 93
 We may, however, "affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987). An injunction is appropriate only where there is a threat of continuing injury. United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); TRW, Inc. v. FTC, 647 F.2d 942, 954 (9th Cir.1981); Morning Pioneer, Inc. v. Bismarck Tribune Co., 342 F.Supp. 1138, 1143 (D.N.D.1972), aff'd, 493 F.2d 383 (8th Cir.), cert. denied, 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974). Since Siemens is no longer selling to Hayden or Schein Dental, as is its right, see United States v. Colgate & Co., 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919), there is no danger that it will sell to them on discriminatory terms in violation of 15 U.S.C. Sec. 13 (1982), and accordingly no basis for a Robinson-Patman injunction.
 
 
 94
 E. Defendants' Counterclaims.
 
 
 95
 The district court dismissed all but the first of Siemens' counterclaims against Hayden and Schein. Hayden, 672 F.Supp. at 746-51. Siemens pursues on appeal only its second and fifth counterclaims; i.e., that Schein Dental's continuing, unauthorized sale of Siemens' x-ray equipment constitutes a violation of Section 43(a) of the Lantham Act, 15 U.S.C. Sec. 1125(a) (1982); and that Schein's purchase for resale of Siemens equipment from authorized Siemens dealers, in knowing violation of their dealership agreement with Siemens, constitutes a tortious interference with contractual relationships in violation of New York law.
 
 
 96
 Healthco asserted, and pursues on appeal after dismissal by summary judgment below, a single counterclaim that Hayden and Schein are "free riders", capitalizing upon presale, point-of-sale and postsale services provided by "full service" dealers such as Healthco, and that this constitutes unfair competition under New York law.
 
 
 97
 1. The Lanham Act Claim (Siemens' Second Counterclaim).
 
 
 98
 Siemens alleges that Schein's continued unauthorized sale of Siemens x-ray equipment violates Siemens' rights under section 43(a) of the Lanham Act, 15 U.S.C. Sec. 1125(a) (1982).[13] Siemens argues that it has no control over the assembly, installation, and servicing of the Siemens equipment Schein sells, and therefore cannot control the quality of its product. The district court dismissed this claim on the ground that Schein Dental sells the identical Siemens product sold by authorized Siemens dealers, see Hayden, 672 F.Supp. at 748; that Schein Dental's customers "are well aware that what they purchase from Schein [Dental] is simply the manufactured product and not its installation," id., precluding any violation (citing Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 130, 67 S.Ct. 1136, 1139, 91 L.Ed. 1386 (1947)); and that "[t]he unauthorized sale of a genuine trademarked product does not in itself constitute trademark infringement," Hayden, 672 F.Supp. at 748, since there is "no possibility of deception or confusion," id. at 749.
 
 
 99
 Siemens contends that our decision in El Greco Leather Prods. Co. v. Shoe World, Inc., 806 F.2d 392, 395-96 (2d Cir.1986), cert. denied, --- U.S. ----, 108 S.Ct. 71, 98 L.Ed.2d 34 (1987), and a concurring opinion in Original Appalachian Artworks, Inc. v. Granada Elecs., Inc., 816 F.2d 68, 76 (2d Cir.) (Cardamone, J., concurring), cert. denied, --- U.S. ----, 108 S.Ct. 143, 98 L.Ed.2d 99 (1987), established that identical goods sold in an unauthorized manner are not "genuine" for purposes of the Lanham Act. These cases, however, are factually distinct from the present case and do not support Siemens' claim.
 
 
 100
 In El Greco, the plaintiff cancelled an order of shoes from a manufacturer in Brazil, which then sold the shoes, bearing plaintiff's trademark, to the defendant, a discount retailer. We concluded that the plaintiff was entitled to relief pursuant to 15 U.S.C. Sec. 1114(1) (1982) because "[t]he holder of a trademark is entitled to require, as El Greco did here, that no merchandise be distributed without its first being inspected by the holder or its agent to insure quality," 806 F.2d at 395, and that inspection had not occurred. See Original Appalachian, 816 F.2d at 72 (construing El Greco). Original Appalachian involved a sale of trademarked goods where there was "a very real difference in the product itself," 816 F.2d at 73, from the authorized article. The majority's decision was premised upon the fact that "the goods are confusingly different, ... [and] Section 1114 was intended to prevent any consumer confusion over similar goods." Id. Judge Cardamone's concurrence emphasized "the mark owner's right to control the quality of its product...." Id. at 76.
 
 
 101
 These cases do not contravene the district court's conclusion that the unauthorized sale of a trademarked article does not, without more, constitute a Lanham Act violation. The district court correctly cited Stormer, A Div. of Fugua Indus. v. Johnson, 587 F.Supp. 275 (W.D.Mich.1984), for this proposition. See also Bandag, Inc. v. Al Bolser's Tire Stores, Inc., 750 F.2d 903, 911 (Fed.Cir.1984); Monte Carlo Shirt, Inc. v. Daewoo Int'l (Am.) Corp., 707 F.2d 1054, 1058 (9th Cir.1983); 2 J. McCarthy, Trademarks and Unfair Competition Sec. 25.11 (2d ed. 1984 & Supp.1987).
 
 
 102
 Bandag and Stormer indicate where the line should be drawn. In Bandag, the Federal Circuit concluded that the defendant was not required to obtain authorization to sell plaintiff's trademarked goods, but that "it was obliged not to do so in a manner which would have been likely to suggest to prospective customers that it was part of the [plaintiff's] organization of franchisees." 750 F.2d at 911. Stormer similarly concluded that "defendants have used plaintiff's trademarks in a manner which is likely to cause the public to believe that defendants are part of [plaintiff's] authorized sales network,"587 F.Supp. at 279, and therefore required the use of an appropriate disclaimer, id. at 280.
 
 
 103
 In our view, the district court struck the proper balance in this case by dismissing Siemens' second counterclaim, but granting an injunction on its first counterclaim prohibiting any representation by Schein Dental that Siemens' warranty applies to Siemens products purchased from Schein Dental. See supra note 1.
 
 
 104
 2. Tortious Interference with Contractual Relations (Siemens' Fifth Counterclaim).
 
 
 105
 Siemens alleges that plaintiffs interfered with the Authorized Dealership Agreement between Siemens and its dealers, which proscribed sales of Siemens equipment other than to dentists, by inducing authorized dealers to sell to Hayden and Schein Dental in violation of the agreement. The district court dismissed this claim on the ground that Siemens suffered no pecuniary loss either in the sales, since it profited from them, or from the expense of tracking down the sources of Schein Dental's equipment, as this was a necessary part of enforcing the Dealership Agreement. Hayden, 672 F.Supp. at 750.
 
 
 106
 Siemens cites to the following from Guard-Life Corp. v. S. Parker Hardware Mfg. Co., 50 N.Y.2d 183, 406 N.E.2d 445, 428 N.Y.S.2d 628 (1980):
 
 
 107
 On principle, the injured party in the action against the other contracting party for breach of contract would be limited to the elements of damage recoverable in a contract action. In an action against the third party for tortious interference, however, the elements of damages, including consequential damages, would be those recognized under the more liberal rules applicable to tort actions (Restatement, Torts 2d Sec. 774A, Comment c).
 
 
 108
 Id. at 197 n. 6, 406 N.E.2d at 452 n. 6, 428 N.Y.S.2d at 636 n. 6 (emphasis added). Siemens concludes that the district court took too constrained a view of damages, failing to apply "the more liberal rules applicable to tort actions."
 
 
 109
 The Restatement comment cited by the New York Court of Appeals for this proposition, however, deals with "loss of profits and chances for gain." Siemens contends, on the contrary, that "such matters as risk to reputation, increased exposure to product liability suits and undermining of Siemens marketing strategy" warrant both damages and injunctive relief. Although "actual harm to reputation" is a recoverable damage for this tort, see Restatement (Second) of Torts Sec. 774A(1)(c) (1977), Siemens is seeking "an injunction to prevent the kind of harm to its reputation that comes from its goods being distributed in a manner that deprives it of control over their quality," again citing El Greco, which, as we have already indicated, is not on point.
 
 
 110
 We agree with the district court that Siemens has not established the pecuniary injury required to establish a claim for tortious interference with business relations. This claim was therefore properly dismissed. See Landmark Dev. Corp. v. Chambers Corp., 752 F.2d 369, 373 (9th Cir.1985) (per curiam). Furthermore, it would appear that pecuniary injury is an element of this tort and must be established as a basis for injunctive relief, as well as damages. See Restatement (Second) of Torts Sec. 766 and comment u (1977).
 
 
 111
 3. Unfair Competition (Healthco's Counterclaim).
 
 
 112
 Healthco claims that plaintiffs "free ride" upon Healthco's presale, point-of-sale and postsale services, even encouraging potential purchasers to examine x-ray equipment at the facilities of full service dealers such as Healthco preparatory to a lower priced purchase by mail order, and that this constitutes common law unfair competition actionable under New York law.
 
 
 113
 The district court rejected this claim on two grounds. First, it noted that dentists can inspect dental x-ray equipment at their colleagues' offices, at conventions, or by comparing prices and features through mail order catalogs, so it "makes little economic sense" for plaintiffs to refer potential customers to full service dealers with any regularity, since they would risk losing sales to those dealers. Hayden, 672 F.Supp. at 752. Second, the court pointed out that " '[c]ommon law unfair competition must be grounded in either deception or appropriation of the exclusive property of the plaintiff,' " id. (quoting Societe Comptoir de L'Industrie Cotonniere Establissements Boussac v. Alexander's Dep't Stores, Inc., 299 F.2d 33, 36 (2d Cir.1962)), a standard it deemed not met by Healthco's allegations of free riding. Id.; see Smith v. Chanel, Inc., 402 F.2d 562, 565 (9th Cir.1968) (quoting Societe Comptoir ); Kellam Energy, Inc. v. Duncan, 668 F.Supp. 861, 879 (D.Del.1987) (citing Societe Comptoir ).
 
 
 114
 We do not agree with the district court's first ground for rejecting Healthco's counterclaim. Healthco contends that whatever the hypothetical possibilities, this record shows that plaintiffs regularly sent potential customers to view dental x-ray equipment at the facilities of full service dealers. There is probably an adequate dispute concerning that factual issue to preclude summary judgment, assuming that this practice, if proved, would establish unfair competition actionable under New York law.
 
 
 115
 We agree with the district court, however, in rejecting the latter proposition. Healthco cites a number of cases to us concerning the tort of unfair competition, including our pronouncement in Roy Export Co. Establishment v. CBS, 672 F.2d 1095 (2d Cir.), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), that the "tort is adaptable and capacious" and has been given a broad construction by New York courts, id. at 1105. We also noted there, however, the objection that "such an amorphous cause of action is capable of mischievous application." Id.
 
 
 116
 As the district court conceded, 672 F.Supp. at 751, Healthco's claim is "novel and interesting." It is not, however, grounded in any New York case of which we are aware that is at all close on its facts to the counterclaim alleged here. Furthermore, the "free rider" tort for which Healthco contends has the potential significantly to circumscribe price competition. We conclude that it is not the role of a federal court ruling in diversity to undertake such an expansion of New York law. We accordingly affirm the district court's dismissal of Healthco's counterclaim.
 
 Conclusion
 
 117
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Charles M. Metzner, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 The complaint alleges only an attempt, and not a conspiracy, to monopolize. Since the district court addressed the merits of both claims, we shall do so as well, treating the complaint as implicitly amended to add the conspiracy claim. See Fed.R.Civ.P. 15(b)
 
 
 [2]
 Siemens' first counterclaim alleged, inter alia, that Schein Dental falsely represented in its mail order catalog that Siemens' manufacturer's warranty applies to Siemens products purchased from Schein Dental. The district court entered a preliminary injunction prohibiting that representation, and the prohibition was continued by a subsequent stipulation and order
 
 
 [3]
 As to Siemens' first counterclaim, see supra note 2
 
 
 [4]
 Section 1 of the Sherman Act provides in pertinent part:
 Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.
 15 U.S.C. Sec. 1 (1982).
 
 
 [5]
 The reference is to Continental T.V. Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), and United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). Sylvania determined that nonprice restrictions imposed upon distributors by agreements with manufacturers are to be judged under the rule of reason, rather than as per se illegal, for purposes of Sherman Act section one analysis. 433 U.S. at 57-59, 97 S.Ct. at 2561-62; see Borger v. Yamaha Int'l Corp., 625 F.2d 390, 397 (2d Cir.1980). The Court specifically noted the utility of such restrictions to curb "free riding" by discounters, the issue presented in Monsanto. See Sylvania, 433 U.S. at 55, 97 S.Ct. at 2560; Note, Antitrust: Business Electronics Corp. v. Sharp Electronics Corp.--A Better Rule for Vertical Restraints, But Is It Legal?, 1987 B.Y.U.L.Rev. 1035, 1047-49. Colgate ruled that a manufacturer has the right to deal, or refuse to deal, with whomever it likes, so long as it does so independently, and to announce in advance the circumstances under which it will refuse to sell. 250 U.S. at 307, 39 S.Ct. at 468
 
 
 [6]
 To avoid summary judgment, there must be " 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' " Law Firm of Daniel P. Foster v. Turner Broadcasting Sys., 844 F.2d 955, 959 (2d Cir.) (quoting Anderson, 477 U.S. at 249, 106 S.Ct. at 2510), cert. denied, --- U.S. ----, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988); see Alpert's Newspaper Delivery Inc. v. New York Times Co., 876 F.2d 266, 272 (2d Cir.1989)
 
 
 [7]
 Plaintiffs contend that Siemens (rather than dealers) was supposed to make these calls, and discriminatorily denied them to Schein Dental customers
 
 
 [8]
 Section 2 of the Sherman Act provides in pertinent part:
 Every person who shall monopolize, or attempt to monopolize or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony....
 15 U.S.C. Sec. 2 (1982).
 
 
 [9]
 As the district court observed, however:
 Any section 2 conspiracy to monopolize must be covered under the broader umbrella of a section 1 conspiracy in restraint of trade. The inverse, of course, would not necessarily follow. Professors Areeda and Turner have noted, "The [section 2 conspiracy] prohibition is curious, because, given Sec. 1, it seems entirely redundant." 3 P. Areeda & D. Turner, Antitrust Law p 839, at 358 (1978).
 Hayden, 672 F.Supp. at 741 n. 21. It may accordingly be the case that the Monsanto-Matsushita rule extends to all section 2 conspiracies, but we need not reach that issue here.
 
 
 [10]
 Section 2 of the Clayton Act, as amended by the Robinson-Patman Act, provides in pertinent part:
 (a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: Provided, That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered....
 * * *
 (c) It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid.
 * * *
 (e) It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.
 (f) It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section.
 15 U.S.C. Sec. 13 (1982).
 
 
 [11]
 Section 4(a) of the Clayton Act provides in pertinent part:
 [A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.
 15 U.S.C. Sec. 15(a) (1982) (emphasis added).
 
 
 [12]
 We note, however, that a violation of 15 U.S.C. Sec. 13(a) (1982) requires not only proof of price discrimination, but a potential impact substantially to lessen competition or create a monopoly in any line of commerce. See Best Brands Beverage, Inc. v. Falstaff Brewing Corp., 842 F.2d 578, 586 n. 2 (2d Cir.1987); Interstate Cigar Co. v. Sterling Drug, Inc., 655 F.2d 29, 31 (2d Cir.1981)
 
 
 [13]
 Section 43(a) of the Lanham Act provides in pertinent part:
 Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by ... any person who believes that he is or is likely to be damaged by the use of any such false description or representation.
 15 U.S.C. Sec. 1125(a). Section 43(a) has been amended by Pub.L. No. 100-667, Title I, Secs. 132, 136, 102 Stat. 3946, 3948 (1988), effective one year after Nov. 16, 1988.