**TECHNOMARINE SA, a Swiss Corporation, Plaintiff,**

**v.**

**JACOB TIME, INC., a New York Corporation; and Does 1–10, inclusive, Defendants.**

**No. 12 Civ. 0790(KBF).**

United States District Court, S.D. New York.

Oct. 24, 2012.

---

Brent Herbert Blakely, Cindy Chan, Blakely Law Group, Hollywood, CA, for Plaintiff.

Saritha Chandrupatla Reddy, William Laurence Charron, Pryor Cashman LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

KATHERINE B. FORREST, District Judge:

On February 1, 2012, TechnoMarine SA ("TechnoMarine") filed this action against Jacob Time, Inc. ("Jacob Time") and unnamed Does 1 through 10. TechnoMarine alleges that Jacob Time engaged in trademark infringement and dilution and false designation of origin under the Lanham Trademark Act of 1946, 15 U.S.C. § 1051 et seq. (the "Lanham Act"), copyright infringement under 17 U.S.C. § 501, and tortious interference with contract, unfair competition, and conversion under New York Law. TechnoMarine also seeks declaratory relief.

TechnoMarine, a company that sells watches exclusively through authorized

channels, commenced this suit after allegedly learning that Jacob Time, a watch distributor that is not an authorized retailer of TechnoMarine branded goods, was selling watches bearing the TechnoMarine marks through its website. (Second Am. Compl. ¶¶ 24–25.) TechnoMarine also alleges that defendant has sold a stolen TechnoMarine watch. (*Id.* at ¶ 31.)

Faced with an initial motion to dismiss, TechnoMarine amended its original complaint on April 4, 2012. (Docket No. 16.) On May 4, 2012, Jacob Time moved to dismiss the amended complaint in its entirety. The Court granted that motion to dismiss with one final leave to replead. *TechnoMarine SA v. Jacob Time, Inc. et al.*, No. 12 Civ. 0790(KBF), 2012 WL 2497276 (S.D.N.Y. June 22, 2012). TechnoMarine filed a second amended complaint ("SAC") on July 3, 2012. (Docket No. 28.) Jacob Time has now moved to dismiss the second amended complaint in its entirety, pursuant to Federal Rule 12(b)(6). (Docket No. 31.)

For the reasons set forth below, the Court GRANTS that motion IN PART and DENIES it IN PART.

## FACTUAL ALLEGATIONS

TechnoMarine has designed, manufactured, distributed and sold fashionable watches under the TechnoMarine marks since 1997, generating hundreds of millions of dollars in worldwide sales. (SAC ¶¶ 12, 16.) In addition to trademark registrations, the Swiss corporation also owns a U.S. copyright certificate for its logo. (*Id.* ¶ 14.) Sales of TechnoMarine products are contractually permitted only through authorized dealers, most of which are not authorized to sell the products on the Internet. (*Id.* ¶ 21.) TechnoMarine's authorized retailers have entered into agreements with the watchmaker prohibiting them from transshipping and selling TechnoMarine products to unauthorized third parties or online retailers. (*Id.* ¶ 22.)

Based on plaintiff's information and belief, Jacob Time is a watch distributor in New York, New York that offers premium brand watches at discounted prices through its website. (*Id.* ¶ 23.) Jacob Time is not an authorized retailer of TechnoMarine watches, but "has purchased, advertised, offered for sale, and/or sold watches" bearing the TechnoMarine marks. (*Id.* ¶¶ 24–25.)

TechnoMarine contends that watches sold by Jacob Time are "not genuine TechnoMarine branded products" because a sample TechnoMarine watch purchased by TechnoMarine from Jacob Time's website "was not intended for sale and distribution in the United States," was missing the "tags and labeling ... which accompany genuine TechnoMarine watches," is missing the "standard warranty card" that accompanies genuine TechnoMarine watches, and allegedly did not undergo the post-shipment quality control procedure that applies to TechnoMarine watches sold through authorized channels. (*Id.* ¶¶ 26–30.) The Second Amended Complaint adds an additional allegation that defendant Jacob Time is selling stolen watches, based on an analysis of the serial number of a sample watch TechnoMarine purchased from Jacob Time.[1] (*Id.* ¶¶ 31–32.)

On or about November 7, 2011, TechnoMarine sent a cease and desist letter to Jacob Time, notifying it of plaintiffs rights and warning that further purchase of TechnoMarine watches from authorized distributors or retailers would render it

---

1. The Second Amended Complaint in several places alleges that defendant is selling stolen TechnoMarine "watches" (SAC ¶¶ 31, 32, 35, 40–42, 45, 90, 91, 94, 96, 98), but the only specific factual allegation in the SAC regards a single watch that plaintiff purchased from defendant's web site. (SAC ¶ 31.)

liable for tortious interference with contract. (*Id.* ¶ 33.) Jacob Time has continued to purchase, advertise, promote, offer for sale and/or sell the watches on its website. (*Id.* ¶¶ 34–35.)

## STANDARD OF REVIEW

On a motion to dismiss, this Court accepts as true all well-pleaded factual allegations. *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). This means that this Court must accept a plaintiff's factual allegations in his complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir.2010). Taking those factual allegations as true, to withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, while "Rule 8 marks a notable and generous departure from hyper-technical, code-pleading regime of a prior era, [ ] it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal punctuation omitted); *see also* Fed.R.Civ.P. 8(a)(2).

## DISCUSSION

### *First and Second Claims for Relief*

A. Legal Standard for Infringement and False Designation

Plaintiff's first two claims allege trademark infringement and false designation of origin under the Lanham Act. 15 U.S.C. §§ 1114, 1125 (West 2012). In order to state a trademark infringement claim, plaintiff must satisfy a two-prong test: first, that it has a valid mark entitled to protection under the Lanham Act and, second, that defendant's use of the mark (or any "reproduction, counterfeit, copy, or colorable imitation" thereof), in commerce, is likely to cause consumer confusion "as to the origin, sponsorship, or approval of [defendant's] goods, services, or commercial activities by [plaintiff]." 15 U.S.C. § 1114(1)(a) (West 2012); *Gruner + Jahr USA Publ'g v. Meredith Corp.,* 991 F.2d 1072 (2d Cir.1993). The same analysis applies to claims of false designation of origin under § 43 of the Lanham Act. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 454 F.3d 108, 114 (2d Cir. 2006). Plaintiff adequately alleges a valid trademark. (SAC ¶¶ 11, 37.) To determine whether plaintiff has pled claims for trademark infringement or false designation of origin therefore depends on the adequacy of the allegations with respect to consumer confusion.

Consumer confusion may be alleged in at least three ways. First, plaintiff may plead sufficient facts to satisfy the nonexclusive 8–factor test of *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961): (1) the strength of the senior user's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will bridge the gap; (5) actual confusion; (6) the junior user's good faith in adopting its own mark; (7) the quality of defendant's product; and (8) the sophistication of the buyers.

Though *Polaroid* itself dealt with trademark infringement between two different types of noncompeting products, the Second Circuit has held that the *Polaroid* analysis applies to claims involving identi-

cal and competing products as well. *Physicians Formula Cosmetics, Inc. v. W. Cabot Cosmetics, Inc.*, 857 F.2d 80, 83 (2d Cir.1988).

In addition to the *Polaroid* analysis, consumer confusion may be inferred where the alleged infringer used a "counterfeit" mark. The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127 (West 2012). Courts determining whether goods are counterfeit (and therefore, for present purposes, whether consumer confusion may be inferred) have found a prima facie case is satisfied where the plaintiff made evidentiary allegations based on falsified logos, inferior workmanship and materials, and combinations of colors and markings not found in a non-counterfeit product. *See, e.g., Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F.Supp.2d 585, 597 (S.D.N.Y.2010), *amend. on recon.* (Mar. 23, 2010); *Motorola, Inc. v. Abeckaser*, 07 Civ. 3963, 2009 WL 962809, at *5–*6 (E.D.N.Y. Apr. 8, 2009).

Third, for "grey market" goods—goods that are resold through unauthorized channels—a court may find that consumer confusion is adequately alleged when goods are asserted to be not "genuine." The Second Circuit has observed that "[a]s a general rule, 'trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner.'" *See Helene Curtis v. Nat'l Wholesale Liquidators, Inc.*, 890 F.Supp. 152, 157 (E.D.N.Y.1995) (*quoting Polymer Technology Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir.1992)). Allegations of interference with quality control procedures, *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir.1994), or material differences in the goods sold, *Original Appalachian Artworks. Inc. v. Granada Electronics. Inc.*, 816 F.2d 68, 72–73 (2d Cir.1987), are among the factors that can render grey goods non-genuine and therefore support the consumer confusion element of a trademark infringement claim.

## B. Dismissal of the Infringement Claim in the FAC

In its First Amended Complaint, plaintiff failed to allege plausible facts to support the trademark infringement and false designation claims.

This Court found plaintiff's unsupported statement that the watches being sold by Jacob Time "may" be counterfeit to be "conclusory speculation." *TechnoMarine*, 2012 WL 2497276, at *3. As a matter of law, the Court rejected plaintiff's assertion that watches sold by *unauthorized dealers* were necessarily non-genuine for purposes of the Lanham Act. *Id.* The Court advised plaintiff that "[t]o state even a basic claim based on non-genuineness, TechnoMarine must plead sufficient, plausible facts tending to show that the watches sold by Jacob Time actually fail to conform to plaintiff's quality control standards or are materially different from plaintiff's watches." *Id.* at *4.

This Court also previously found that the FAC failed to plead sufficient facts to plausibly allege consumer confusion as to the source or affiliation of the Jacob Time watches. *Id.* The Court explained that Jacob Time's statement on its website that it is not an authorized TechnoMarine dealer and plaintiff's assertion that its watches are typically sold "in the most prestigious stores" were facts that, taken in the light most favorable to plaintiff, undermined rather than supported a consumer confusion argument. *Id.*

## C. Infringement Claim in the SAC

TechnoMarine's Second Amended Complaint does not resolve its pleading defi-

ciencies. In the SAC, TechnoMarine fails to assert sufficient facts to permit a plausible inference that the watches sold by Jacob Time will cause consumer confusion on any of the *Polaroid*, counterfeit goods, or non-genuineness theories. Rather, in the SAC plaintiff has added allegations that a single watch it purchased from Jacob Time was stolen from a lot of genuine TechnoMarine watches bound for its Latin American distributor and that at least one watch was not intended to be sold or distributed in the United States. These allegations indicate that something went awry somewhere along the path between the manufacturer of the TechnoMarine watch and its ultimate intended destination in Latin America, but these allegations do not support the elements of trademark infringement or false designation of origin claims.

#### a. *Polaroid* Factors

■ In the Second Amended Complaint, plaintiff continues to lack sufficient allegations supporting a *Polaroid*-styled likelihood of consumer confusion. The parties do not dispute the first three *Polaroid* factors: that plaintiff's mark is well-recognized, that the product types are identical, and that the marks are identical. As such, the Court need only consider the final five elements: whether plaintiff has alleged sufficient facts that the products will come into direct competition, that actual confusion exists, whether defendant acted in good faith in adopting the mark, whether there are differences in quality of defendant's product, and whether the relevant buyers are sophisticated.

As to direct competition, plaintiff alleges that it does not typically permit authorized TechnoMarine dealers to sell via the Internet. (SAC ¶ 21.) The watches sold by defendant are sold exclusively via the Internet and at a discount. (*Id.* ¶ 23.) That allegation undermines a plausible inference that defendant's watches are in direct competition with those sold by plaintiff's authorized dealers. Nowhere does plaintiff allege that defendant is competing within the same market segment as those dealers.

Nor does the SAC allege facts that plausibly suggest actual confusion. While plaintiff alleges that defendant altered the packaging and labels that accompanied the TechnoMarine watches (SAC ¶¶ 30, 43), that allegation falls short of alleging facts amounting to actual confusion. Plaintiff alleges no new facts in the SAC suggesting that defendant's website disclaimer, which explains it is not an authorized TechnoMarine seller, would be ineffective at distinguishing the Jacob Time watches from those sold by TechnoMarine through its authorized dealers. *See TechnoMarine*, 2012 WL 2497276, at *1. Nor does the complaint allege that the buyers of TechnoMarine watches would be too unsophisticated to understand that defendant is not an authorized seller.

Plaintiff does allege that defendant acted in bad faith in inducing plaintiff's distributors to breach their exclusive distribution agreements, giving defendant access to the TechnoMarine mark. (SAC ¶ 70.) However, that allegation, standing alone, is insufficient to suggest a plausible likelihood of consumer confusion, given the lack of plausible facts alleged for the other elements of the *Polaroid* test.

#### b. Counterfeit Goods

■ As set forth above, adequate allegations that defendant was selling counterfeit goods—through trying to or actually duping customers into the false belief they were purchasing the "real thing"—could support a plausible inference of consumer confusion. However, far from alleging that defendant is selling fake TechnoMarine watches, the essence of plaintiff s allegations are that the watch sold was in fact genuine but somehow did not make it

to its intended Latin American destination. (SAC ¶ 31.)

Plaintiff does allege that the watch sold by Jacob Time was counterfeit because—despite being physically identical to genuine TechnoMarine products—its manufacture was not "authorized for the entire period of production."[2] (SAC ¶ 38.) The SAC alleges that the watch sold by Jacob Time was produced by the same contract manufacturer that produced authorized TechnoMarine watches, using the same materials and designs as those watches, but were produced in excess of the number of watches TechnoMarine had ordered and authorized. (SAC ¶¶ 38, 45.) This "unauthorized production" argument is distinct from the "unauthorized sale" argument that this Court rejected in dismissing the First Amended Complaint.

Even assuming—without deciding—that plaintiff is correct that goods produced outside of an authorized production would be "counterfeit,"[3] the SAC does not allege *any* specific facts to support the claim that the watches sold by Jacob Time were produced in excess of the contractually authorized amount. The only specific allegations made in the SAC are that one of the watches sold by Jacob Time "was not intended for sale and distribution in the United States" (SAC ¶ 27) and that a watch sold by Jacob Time—possibly the very same sample—was stolen from a batch bound for plaintiff's Latin America distributor. (SAC ¶ 31.) The allegation that the watch was "stolen" in fact supports an inference that the particular watch was manufactured within authorized production limits. TechnoMarine's conclu-

sory statement that "at least some of defendant's TechnoMarine branded products may not have come from an authorized source" is insufficient to open the door to discovery on counterfeiting grounds at this time. (SAC ¶ 45.)

### c. Non–Genuineness

■ Finally, to support a trademark infringement claim based on non-genuineness of grey market goods, plaintiff must allege facts to show either interference with quality control procedures or material differences—whether physical or non-physical—from the genuine article.

■ "To be entitled to relief, the trademark holder is not required to adopt the most stringent quality control standards available. A trademark holder must demonstrate only that: (i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the mark." *Warner–Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir.1996).

■ Plaintiff has not alleged facts to suggest that it has established "substantial" post-sale quality control procedures, or that non-conforming sales diminish the value of its mark. The SAC merely states that authorized TechnoMarine watches "undergo a strict quality control procedure" once they are shipped from the foreign manufacturer to a distributor and that the watch sold by defendant "did not undergo this quality control procedure." (SAC ¶¶ 28–29.) However, cases in which the quality control test has supported a

---

**2.** The SAC merges the counterfeit goods theory and non-genuineness theory of consumer confusion but those theories are treated distinctly in the case law and are thus treated separately here.

**3.** Plaintiff cites *U.S. v. Bohai Trading*, 45 F.3d 577, 580 (1st Cir.1995) to suggest that items

produced in excess of an authorized amount are counterfeit marks. However, *Bohai* dealt with the interpretation of the term "counterfeit mark" in a vagueness challenge to the criminal anti-trafficking statute, 18 U.S.C.A. § 2320, and not a civil trademark infringement claim.

non-genuineness claim routinely and more specifically allege an actual disruption in quality control procedures and how such disruption has or would be likely to damage the product itself and thus impact the value of the mark. *See, e.g., PepsiCo, Inc. v. F & H Kosher Supermarket. Inc.,* No. 11 Civ. 425, 2011 WL 6181907, at *4 (E.D.N.Y. Aug. 26, 2011) (finding interference with quality control where defendant's sales of product intended for foreign distribution prevented the plaintiff from monitoring the proper shipment, storage, and shelf life of the perishable product); *Brain Pharma, LLC v. Scalini,* 858 F.Supp.2d 1349, 1355 (S.D.Fla.2012) (dismissing trademark infringement claim were "[c]omplaint fails to allege (1) what Plaintiff's quality control measures are and (2) how the products sold by Defendants fail to meet these quality control measures."); *Adolph Coors Co. v. A. Genderson & Sons, Inc.,* 486 F.Supp. 131 (D.Colo. 1980) (finding plaintiff's inability to control quality significant to trademark infringement claim where defendant failed to refrigerate plaintiff's trademarked product). Plaintiff makes no such allegations here regarding the content of the quality control procedure it employs and whether such procedure is likely to be "substantial."

Accordingly, the additional allegations in the Second Amended Complaint of material differences amounting to non-genuineness are insufficient to support a trademark infringement or false designation of origin claim.

In terms of physical differences, plaintiffs assertion that the sample watch it purchased from defendant was stolen effectively admits that the watch at issue had no material physical differences from a genuine TechnoMarine watch—it was, the complaint alleges, an otherwise genuine watch that had been stolen or diverted. (SAC ¶ 31.) The only physical differences

alleged in the Second Amended Complaint are the differences in packaging and labels, and the lack of a warranty card. (SAC ¶¶ 27, 44.)

The Second Amended Complaint fails to address why differences in packaging are material; for instance, unlike in cases such as *Bel Canto Design, Ltd. v. MSS Hifi, Inc.,* 837 F.Supp.2d 208, 225 (S.D.N.Y. 2011), in the instant case there is no allegation that lack of particular packaging voids the product's warranty. Plaintiff points out that the watch sold via Jacob Time lacks a genuine TechnoMarine warranty card, but does not allege that the lack of such card would make the watch ineligible for the TechnoMarine warranty. (SAC ¶¶ 30, 43.) Nor is there an allegation of alteration of serial numbers or other identifying packaging that might prevent the mark holder from controlling product quality or enforcing a warranty. *See Bel Canto,* 837 F.Supp.2d at 225 (citing *Beltronics USA. Inc. v. Midwest Inventory Distribution, LLC,* 562 F.3d 1067, 1073 (10th Cir.2009) (finding that because "practice of altering . . . serial numbers voided the product's warranty under Beltronics' policy, the radar detectors . . . sold were materially different from genuine Beltronics radar detectors")). While plaintiff alleges that a "manufacturer remains free to refuse to honor all warranties" from a dealer who is "known to handle the product in a negligent manner," plaintiff fails to allege that the watches at issue were altered or handled improperly (though it does allege a watch was stolen). (SAC ¶ 31; Pl.'s Memo. of L. in Oppo. to Dft.'s Motion to Dismiss the Second Amend. Compl. at 13 (*quoting Bel Canto Design Ltd. v. MSS Hifi, Inc.,* 837 F.Supp.2d 208, 230–31 (S.D.N.Y.2011)).)

In addition, the Second Amended Complaint fails to make plausible allegations of non-physical material differences such as interference with warranty coverage.

Plaintiff acknowledges that under New York law TechnoMarine's own warranty applies to its watches purchased through defendant's web site. *See TechnoMarine*, 2012 WL 2497276, at *4 n. 2. Even so, plaintiff argues that Jacob Time's additional warranty that it offers on TechnoMarine watches purchased through the Jacob Time website "could not possibly be as comprehensive" as the service provided by the authorized TechnoMarine dealers, and would therefore impede plaintiff's own warranty. (SAC ¶ 30.) The fact of an additional warranty is not relevant to the validity of plaintiffs warranty, however. As plaintiff makes no allegation that its own warranty would not also apply, the fact that Jacob Time may offer an additional warranty does not dilute plaintiff's separate warranty.

Finally, the plaintiff's "unauthorized production" argument (which this Court has already found above lacks sufficient factual support to constitute counterfeiting) also lacks the factual allegations necessary to state a plausible claim of consumer confusion based on non-genuineness.

In contrast to plaintiff's "unauthorized production" counterfeiting argument, the argument in the non-genuineness context is supported by some Second Circuit precedent. In *El Greco Leather Products Co., Inc. v. Shoe World, Inc.*, 806 F.2d 392, 396 (2d Cir.1986), for instance, the Circuit held a retail seller liable for trademark infringement based upon the seller's sale of goods made by the plaintiff's contracted manufacturer. The Second Circuit found that the defendant's sale of shoes manufactured by the contract manufacturer in excess of those authorized by the plaintiff was "sufficient 'use' [under the Lanham Act] for [defendant] to be liable for the results of such infringement and its claimed lack of knowledge of its supplier's

infringement, even if true, provides no defense." *Id.*

*El Greco* is not dispositive, however. The Circuit clarified its holding in *El Greco* with its decision in *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*, 879 F.2d 1005, 1022–23 (2d Cir.1989). In *H.L. Hayden*, the court stated that Lanham Act claims must still connect the infringing activity to the likelihood of consumer confusion. *Id.* Though the *H.L. Hayden* court had an unauthorized *sale* claim before it, the court explicitly construed *El Greco* to stand for the proposition that interference by the defendant with the plaintiff's quality control measures can constitute consumer confusion. *Id.* at 1023 (rejecting argument that unauthorized production alone satisfies consumer confusion because "[i]n *El Greco*, ... [w]e concluded that the plaintiff was entitled to relief pursuant to 15 U.S.C. § 1114(1) (1982) because [t]he holder of a trademark is entitled to require ... that no merchandise be distributed without its first being inspected by the holder or its agent to insure quality, and that inspection had not occurred") (quotation omitted). The mere fact of unauthorized production alone is insufficient to satisfy the consumer confusion element. *Id.* Unauthorized production is not a separate category of non-genuineness, but is merely a predicate for confusion-causing activities such as interference with quality control or the applicability of a warranty.

■ Given that legal standard, even assuming plaintiff makes a sufficient factual allegation of unauthorized production, that allegation alone is not sufficient to infer consumer confusion. To plausibly allege confusion, plaintiff would have to allege additional facts to show confusion based on differences in warranty coverage[4] or interference with quality control procedures.

---

4. Plaintiff's allegation of confusion based on the additional Jacob Time warranty fails in

the context of an unauthorized production,

Because plaintiff fails to allege facts to support consumer confusion arguments based on interference with warranties or quality control, material differences, counterfeiting, or likelihood of actual confusion, plaintiff has no plausible claim for trademark infringement or false designation of origin under the Lanham Act. Its first and second claims are therefore DISMISSED. However, should facts develop during discovery supportive of such claims, the Court may permit a motion to amend (plaintiff should not attempt to replead this claim now).

### Third Claim for Relief

As to plaintiff's third claim—for trademark dilution—plaintiff continues to fail to allege any facts in support of its claim. Instead, it merely recites the elements of trademark dilution in a conclusory fashion. (SAC ¶¶ 59–66.)

To prevail on the trademark dilution claim, plaintiff must show that " '(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services.' " *TechnoMarine*, 2012 WL 2497276, at *4 (*quoting Savin Corp. v. Savin Group*, 391 F.3d 439, 449 (2d Cir.2004)).

As discussed in relation to the trademark infringement and false designation claims, the Second Amended Complaint makes two specific factual allegations: that one watch was not authorized to be sold in the United States and that one watch was stolen. As explained above, regarding both of these allegations, Plaintiff gives no facts to suggest that the watches are materially different from the authentic TechnoMarine watches. With no material differences, plaintiff cannot plausibly allege that defendant's use of the mark has diminished consumers' ability to "identify and distinguish" the watches. *See TechnoMarine*, 2012 WL 2497276, at *4.

As plaintiff has failed for a second time to plausibly plead trademark dilution, its third claim is DISMISSED WITH PREJUDICE.

### Fourth Claim for Relief

Plaintiffs claim of tortious interference under New York law fares better. "To state a claim for tortious interference under New York law, a plaintiff must establish: '(a) that a valid contract exists; (b) that a third party had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff.' " *TechnoMarine*, 2012 WL 2497276, at *4 (*quot-*

---

just as it failed in the non-genuineness context. (SAC ¶ 30.) The cases that have found confusion based on a retailer-provided warranty involved allegations that the manufacturer-provided warranty was extinguished. *See Perkins Sch. for the Blind v. Maxi–Aids, Inc.*, 274 F.Supp.2d 319, 322 (E.D.N.Y.2003) (finding sufficient allegation of infringement whether "defendants removed the [mark owner's] warranty and substituted their own inferior ... warranty"); *TracFone Wireless, Inc. v. Pak China Group Co. Ltd.*, 843 F.Supp.2d 1284, 1298 (S.D.Fla.2012) (noting "the warranty information is removed, which invali-

dates the [manufacturer's] warranty in its entirety"). As discussed above, TechnoMarine does not allege that defendant eliminated the TechnoMarine warranty. Nor, given the web disclaimer, is there a plausible likelihood that consumers will be confused that the Jacob Time warranty is, in fact, a TechnoMarine warranty. "To support a finding of infringement, a probability of confusion, not a mere possibility, must exist." *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 743 (2d Cir. 1998). Plaintiff fails to plausibly allege such a probability even in the context of an authorized production.

*ing Finley v. Giacobbe,* 79 F.3d 1285, 1294 (2d Cir.1996)).

■ In the Second Amended Complaint, plaintiff plausibly alleges the existence of a valid contract between itself and its Latin American distributor, as well as that Jacob Time was aware of that contract. (SAC ¶¶ 33, 34, 71.) In addition, plaintiff now alleges facts to plausibly suggest an intentional breach has occurred. Unlike the First Amended Complaint, plaintiff's Second Amended Complaint alleges that defendant actively "solicited plaintiff[']s distributors/retailers in order to obtain TechnoMarine branded products from them for resale to consumers." (SAC ¶ 71.) That solicitation, taken as true for the purpose of resolving defendant's motion to dismiss, could establish an intentional breach of the distribution agreements. As such, all four elements of the tortious interference claim are adequately pleaded.

Defendant does not appear to dispute that it knew of plaintiff's distribution contracts. Instead, defendant suggests that plaintiff's claim fails because, it argues, plaintiff must plead that tortious interference was done "without justification". (Dft.'s Motion to Dismiss the Second Amend. Compl. at 14.) According to defendant, plaintiff has not countered the possibility of a legitimate economic justification for interference with the distribution contract and thus cannot make out a tortious interference claim.

■ Defendant's view on justification is incorrect as a matter of law. Justification is a defense to tortious interference and not an element to be plead. It is true that under New York common law, tortious interference must be done "without justification." *See Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (N.Y.1996). However, economic justification is a *defense* to a tortious interference claim, rather than a true element of that claim. *See Foster v. Churchill,* 87 N.Y.2d 744, 749–750, 642 N.Y.S.2d 583, 665 N.E.2d 153 (N.Y.1996) ("Economic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice or illegality.") Plaintiff therefore is not required to plead lack of justification as an element of its tortious interference claim.

Plaintiff has plausibly alleged facts to satisfy all four of the elements of a tortious interference claim under New York law.

### Fifth Claim for Relief

■ Plaintiff's fifth claim—common-law unfair competition—is insufficiently supported by the facts asserted in the complaint. As stated in the Order dismissing the First Amended Complaint, the parties agree that New York common law unfair competition is nearly identical to a Lanham Act claim for trademark infringement, except that the New York claim requires a showing of bad faith. *TechnoMarine,* 2012 WL 2497276, at *5.

In addition to its shortcomings on the Lanham Act claim outlined above, plaintiff has failed to allege sufficient facts to suggest that defendant acted in bad faith. Plaintiff's statement that "Defendant's acts are deliberate and intended to confuse the public as to the source of defendant's goods or services and to injure plaintiff and reap the benefit of plaintiffs goodwill associated with the TechnoMarine Marks" and that "[t]he conduct herein complained of was extreme, outrageous, fraudulent, and was inflicted on plaintiff in reckless disregard of plaintiff's rights" remain unsupported by factual allegations in the complaint. (SAC ¶¶ 49, 74–78.)

In addition, neither of these statements states an unfair competition claim because there is no allegation of bad faith with respect to the mark. As the Second Circuit has observed, "While a trademark

conveys an exclusive right to the use of a mark in commerce in the area reserved, that right generally does not prevent one who trades a branded product from accurately describing it by its brand name, so long as the trader does not create confusion by implying an affiliation with the owner of the product." *Dow Jones & Company, Inc. v. International Securities Exchange, Inc.*, 451 F.3d 295, 308 (2d Cir. 2006).

Even if plaintiff's allegation that defendant knew it was helping the authorized distributors to violate their sole distributorship contracts is correct, then, such knowledge does not indicate bad faith with respect to the TechnoMarine mark. In fact, Jacob Time states unmistakably on its web site (which was incorporated into the complaint by reference) that it is not affiliated with TechnoMarine. (SAC Ex. 2.)

Plaintiff is left with a mere recitation of the legal standard for a bad faith action, which is insufficient to state a claim for unfair competition. As such, plaintiff's fifth claim, for unfair competition, is DISMISSED WITH PREJUDICE.

### *Sixth Claim for Relief*

■ In addition to its trademark claims, plaintiff claims Jacob Time has infringed its copyrights. To establish a claim of copyright infringement, plaintiff "must show both ownership of a copyright and that defendant copied the protected material without authorization." *E.g., Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir.1992). As stated in the Order dismissing the First Amended Complaint, plaintiff's alleged copyright registration creates a presumption of validity, and the Court need not rule on the originality of the TechnoMarine logo. *See TechnoMarine*, 2012 WL 2497276, at *6; 17 U.S.C. § 410(c) (West 2012). In addition, however, plaintiff must overcome the statutory presumption of 17 U.S.C. § 109(a), also known as the "first sale" doctrine. Under the first sale doctrine, "the owner of a particular copy ... lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy". *Id.* A party that sells a copy that is 1) "lawfully made" 2) "under" the Copyright Act is thus protected against an infringement claim due to its mere resale of the copyrighted good. However, to qualify for the protections of § 109(a) a seller must be the lawful owner of the goods in question. *See* 17 U.S.C. § 109(d).

■ In the Second Amended Complaint, plaintiff now states plausible theories that the watches in questions were neither lawfully owned by defendant, nor "made under" the Copyright Act.

First, plaintiff alleges facts to suggest that § 109(a) does not apply to the import of its goods from its foreign manufacturers. In *John Wiley & Sons, Inc. v. Kirtsaeng*, 654 F.3d 210 (2d Cir.2011) *cert. granted.* —— U.S. ——, 132 S.Ct. 1905, 182 L.Ed.2d 770 (2012), the Second Circuit held that copyrighted goods manufactured abroad do not fall under the protection of 17 U.S.C. § 109(a). Thus, a plaintiff states a claim for copyright infringement where the seller sells copyrighted goods manufactured abroad without the authorization of the copyright holder prior to the first U.S. sale. *Id.* at 222 ("[W]e hold that the phrase 'lawfully made under this Title' in § 109(a) refers specifically and exclusively to copies that are made in territories in which the Copyright Act is law, and not to foreign-manufactured works.")

Applying *John Wiley* to this case, the facts as alleged in the SAC do not provide a basis for the first sale doctrine to apply. Plaintiff asserts that *none* of its TechnoMarine watches are manufactured in the United States. (SAC ¶ 13.) Plaintiff further alleges that defendant made unautho-

rized sales of its copyrighted works—such as the TechnoMarine insignia—within the United States. Those allegations overcome the presumption of § 109(a).[5]

Even if the first sale doctrine were to apply to sales of foreign manufactured goods, however, plaintiff also asserts a second set of facts in support of its copyright infringement claim. Namely, plaintiff now asserts that Jacob Time was not the lawful owner of at least one of the TechnoMarine watches it sold. Plaintiff alleges that a sample watch it purchased from Jacob Time was part of a stolen batch destined for Jacob Time's unnamed Latin American distributor. (SAC ¶ 31.) If Jacob Time was not the true owner of the watch in question, it cannot qualify for the legitimate first sale protections of § 109(a) because § 109(d) limits those protections to the lawful owner of the copyrighted goods.

Plaintiff thus states a plausible claim for copyright infringement and its sixth claim shall proceed. As such, defendant's request for its § 505 fees is DENIED.

### Seventh and Eighth Claims for Relief

█ In its Second Amended Complaint, plaintiff has added claims for a declaration that the watches sold by Jacob Time are stolen and that plaintiff should recover for such stolen goods under a common law conversion theory. (SAC ¶¶ 89–98.) Because plaintiff fails to allege on the face of the complaint that the foreign distributor with the right to sue has assigned such right to plaintiff, the conversion and declaratory judgment claims cannot proceed.

█ Under New York Law, " '[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.' " *Thyroff*

v. *Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir.2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121 (N.Y.1995)). Where, as here, a defendant is in lawful possession of allegedly stolen goods (i.e. was without notice that they were stolen), the plaintiff must make a demand for the return of such goods and be refused before the plaintiff may bring a conversion action. *See Salatino v. Salatino*, 64 A.D.3d 923, 881 N.Y.S.2d 721 (3d Dep't 2009), *leave to appeal denied*, 13 N.Y.3d 710, 890 N.Y.S.2d 448, 918 N.E.2d 963 (N.Y.2009). Such demand must apprise the defendant of the nature of the property at issue and give that defendant a reasonable opportunity to identify the property. *See, e.g., Branch v. Latham*, 186 A.D. 437, 174 N.Y.S. 295 (1st Dep't 1919). In addition, only one who has ownership, possession, or control over the property prior to the filing of the suit—or that entity's assignee—may bring a claim for conversion under New York law. (Pl.'s Memo. of L. in Oppo. to Dft.'s Motion to Dismiss the Second Amend. Compl. at 23.) *See Zabriskie v. Smith*, 13 N.Y. 322 (N.Y.1855).

In this case, plaintiff lacks standing to bring a claim for conversion. The parties agree that plaintiff's authorized distributor, rather than plaintiff, was the rightful owner of the sample watch at issue at the time of sale and therefore has standing to sue. (Pl.'s Memo. of L. in Oppo. to Dft.'s Motion to Dismiss the Second Amend. Compl. at 23.) Plaintiff's opposition brief attempts to circumvent its lack of stacking by stating that "Plaintiff's distributor to which the missing goods belong has assigned all its rights under the conversion claims to plaintiff." *Id.* Yet no such alle-

5. The Supreme Court will review the Second Circuit's decision in *John Wiley* this term, suggesting that the bounds of the legitimate first sale doctrine remain unsettled. *Kirtsaeng v. John Wiley & Sons. Inc.*, —— U.S. ——, 132 S.Ct. 1905, 182 L.Ed.2d 770 (2012).

gation appears on the face of the Second Amended Complaint. The Court will not infer facts from beyond the four corners of the SAC, unless that extrinsic evidence is incorporated by reference into the complaint. No such incorporation has occurred here.

 In addition, even if the conversion claim has been assigned, however, the SAC fails to allege plausible facts that the demand to return any allegedly stolen watches was denied. New York Law places the burden of proof on a defendant to prove goods were not stolen in the context of replevin, but there is no such burden-shifting in the context of a conversion claim. *Bakalar v. Vavra*, 619 F.3d 136, 147 (2d Cir.2010) (articulating burden-shifting in replevin context); *Pompez Exhibition Co. v. Flatto*, 261 A.D. 613, 26 N.Y.S.2d 654 (1st Dept.1941) ("Plaintiff's right to recover for conversion depends on the strength of its own legal ownership, not on alleged defects of defendants' title."). Plaintiff thus must make a demand that is sufficient to prove its own legal ownership of the watch in question (or that of its agent), rather than forcing defendant to prove that the watch was acquired legitimately.

Yet, defendant's exhibits indicate that Plaintiff failed to specify the serial numbers or identity of the allegedly stolen watch at issue in making its "demand."[6] (Dft.'s Motion to Dismiss the Second Amend. Compl. at Ex. A, B.) Plaintiff's "demand" did not sufficiently apprise defendant of the basis of the belief that the watch was stolen or give defendant an opportunity to cure any wrongful posses-

sion. The demand was therefore insufficient and defendant's actions in response did not constitute a "refusal" that would give rise to a conversion claim.

The Second Amended Complaint does not plausibly state a claim for conversion or declaratory relief since plaintiff has not yet pled sufficient facts to support "demand" and "refusal" under New York law and, further, it has not alleged that the conversion claims have been assigned to it by its distributors. As this is the first time plaintiff has pleaded the seventh and eighth claims, those claims are DISMISSED with leave to replead.

## CONCLUSION

Plaintiff's Second Amended Complaint now passes the plausibility bar with respect to several of its claims and, as such, defendant's motion to dismiss is DENIED IN PART and GRANTED IN PART. The trademark infringement and false designation of origin claims are DISMISSED WITHOUT PREJUDICE, and the Court will consider a motion to amend the SAC should plaintiff discover additional facts in support of those claims. The unfair competition claim is DISMISSED WITH PREJUDICE. The conversion and declaratory relief claims are DISMISSED WITH LEAVE TO REPLEAD. Those claims must be replead within 14 days of this Order or they will be dismissed with prejudice. Finally, the motion to dismiss is DENIED with respect to the tortious interference and copyright infringement claims and those claims shall proceed.

---

**6.** Plaintiff's objection to the Court's consideration of the emails attached to defendant's Motion to Dismiss the Second Amended Complaint is overruled. On a motion to dismiss, " 'the complaint is deemed to include ... any statement or documents incorporated in it by reference.' " *In re Bristol–Myers Squibb Se-*

*curities Litig.*, 312 F.Supp.2d 549, 555 (S.D.N.Y.2004) (quoting *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991)). Plaintiff's allegation that "Despite due demand, defendant refuses to return any stolen products" incorporates the demand documents by reference. (SAC ¶ 91.)

The parties in this matter are directed to appear at a status conference on *Friday, November 9, 2012. at 4:00 p.m.* to discuss setting a schedule in this matter.

The Clerk of Court is directed to close the motion at Docket Number 31.

SO ORDERED.

